Good morning. May it please the Court, my name is Evan Myers and I represent the plaintiff appellant, Jose Gomez, in this matter. This case is on appeal from the District Court for the Central District of California due to the District Court's erroneous ruling that the defendant, Campbell-Ewald Company, or CE, was entitled to derivative sovereign immunity for a 2006 text message blast sent to individuals who did not provide prior express consent to receive them. The District Court's summary judgment order below was confined to determination of whether the defendant's entitled to derivative sovereign immunity. There's no real dispute that the text message violated the TCPA, that defendant designed and implemented the campaign. Well, that's not before us whether there's a dispute or not. That's not before us, right? That's correct. We're here on whether this immunity was correctly applied. That's correct. And that was the rest of the sentence, is that the defendant there's no dispute the defendant is liable under the TCPA but for its claimed immunity defense here. So the issue of which immunity standard applies I don't know whether anybody's agreed on liability or not. This case got kicked out of the House, you know. It did, Your Honor. It did, Your Honor. The issue of which immunity standard applies has been fully briefed before this Court and below. But that issue's not necessary for resolution of this case because the defendant is not entitled to immunity under any standard, whether it be Yersley or Boyle. Immunity under either standard has only been provided to government contractors who followed the government's specifications and requirements of the government. Under either standard, a government contractor exercising its own discretion in a manner of giving rise to tort is not immune from liability. And likewise, under either standard, a government contractor is not immune from liability if its own actions and decisions fail to comply with the authority given to it by the government. To claim immunity under either standard, Campbell v. Wald needs to show that the Navy exercised its discretion and directed the campaign and that CE conducted and executed the campaign in conformance with the requirements of the Navy. This is the analysis required by virtually every case that has discussed sovereign immunity, including this Court in Myers, including the Fourth Circuit's very, very recent opinion in In re Cape Yacht. Kennedy, in a more extreme case, and let me work backwards to find out where the line is drawn. Suppose the Navy set out intentionally to send texts to anybody they could get their numbers for. Maybe they didn't even bother with the age limitation and with intent instructed its marketing consultants, ad agency, whoever else, go send this text to everybody you can. The Navy's premise would be that it's immune somehow, and the Navy is immune. But in that case, if it was clear that it was the action taken, that the action was taken at the direction of the Navy, would the private parties involved have derivative immunity? In such a case, which is clearly not an issue here. That's why I'm trying to start at one edge and we're going to work back. In such a case, if the nexus, if the basis that gave rise to the tort liability, in this case the choice of to whom to send the messages, if that was with the full knowledge of the Navy saying, you know, send it to this list. I don't want to miss anybody, so if it means I blanket the universe, I'm blanketing the universe. Or here's a list of 100,000 people, send it to it, and they send it to it, and it turns out that was, you know, a TCPA violation, then the contractor was simply carrying out the directives of the Navy who was exercising its discretion. I believe that the contractor would probably be entitled to immunity there. Likewise, if the Navy said, we don't care what you do, we don't care about the TCPA, we're above the law, do it anyhow, you fully warned us about this, thank you very much, then there would probably be immunity. But not only didn't that happen here, that was the actual opposite of what happened here. It wasn't an issue of whether the Navy hadn't thought this through or hadn't given any thought to whether it wanted the law violated. Campbell Ewald's contract with the Navy specifically said that it may not violate any federal statute when it conforms, when it does its duties for the Navy. And the Navy testified in the 30B6 deposition that that was very important. Now, importantly, the district court relied only on declarations, you know, supplied by Campbell Ewald's counsel here and completely and flatly ignored the Navy's own testimony in this case as to what it did want or did not want of its contractors and what it did or did not authorize. So, for example, the the Well, let me, so what are the precise differences? And I want to make clear, the first case you acknowledge derivative immunity would apply, the hypothetical I posed to you. And what are the precise distinctions that you draw that you suggest should be the lines that we draw to explain why immunity wouldn't apply here? Because the question that should be decided is whether the Navy exercised its discretion and directed and authorized its contractor, Campbell Ewald, to conduct the campaign as it was actually conducted. Did they approve and authorize Campbell Ewald to send the text messages in the way that they did to the people to whom they did, to who they sent it? And the answer here is flat-out no. And that's the Navy specifically saying, under oath, we would not have authorized this campaign had we known it would have been in violation of the TCPA. We would Well, but that's a slightly different question, because if the Navy is, makes a decision to go forward, I'm not sure that its knowledge of whether or not it would be a violation of the statute for a private party to do that goes to the heart of it. I mean, are you telling me that the contractor has an obligation to inform the Navy as to what the law is? Suppose the Navy just came in and said, do it. The contractor may know but doesn't say anything about it. You know, that's not what the law permits at least private parties to do. If the Navy says do it, wouldn't there be immunity anyway? No, Your Honor, there would not be. In fact, the law is very clear on this, that under the government contract, in this circuit and throughout the country, when the contractor does have an obligation to inform the Navy of any risks or any warnings of what it is that it's going forward. If the contractor is or should be aware that what the Navy is doing could be illegal or would be in violation of the TCPA, they actually are obligated to inform the Navy of it. And in this case, it actually would have been important, because again, the Navy testified, we demand that our contractors comply with the law. We would not have authorized anything that would have complied with the law. Had we known this was going to people who didn't consent to receive it, we would have said no. Sotomayor in government agencies is not going to say we, our agreement encompassed the idea that it, that they could take action that would be illegal. I mean, what would happen if the Navy, let's say, contracted with someone to produce a certain type of vehicle and says in producing this vehicle, we expect that you will comply with the law and not violate the laws of any state. And they construct the vehicle, and when the vehicles are made, they're dangerous. And they're, and you would have a defect that would lead to torts under different state laws that you could be sued for. Wouldn't you have a claim against the government in the court of claims with respect to that contractor as opposed to, and wouldn't that be where you would go if you were individuals to go in and file a claim? Absolutely. In fact, that's what courts throughout the country have handled. In Boyle, Boyle has been applied by this circuit many times. Boyle has been cited by the Supreme Court 16 times, and many of those cases involve equipment, a product's liability, where the plaintiff went to the Federal Court. And the Court almost always says you are not immune to the extent the contractor was the one who was responsible in exercising discretion in what gave rise to the tort. So your argument is as long as they comply with the directive, then there is immunity. And if they don't comply with the directive, the, in other words, the contractor or whatever the government required of them, if they don't, then they can be liable. They don't have this immunity. Yes, but the directive has to be an exercise of the government's discretion with respect to what gave rise to the harm. So, for example, in Trevino, which is a fairly recent, or not that fairly recent, but a Fifth Circuit case in Trevino, the court was. Well, no, but the government is never going to say do this and we don't care whether you violate the State law. They are always going to take the position that our directive did not include that you not violate. That's true here, but there's two things. One, the, in addition to violating the CCPA, which was against the contract, what was also takes CE's actions outside the scope of their authority was the Navy had an internal policy that CE was very aware of because they're the ones who recommended it, ironically. And the policy was that you, CE, can only send communications to individuals who first opted in to receive information from or about the Navy. And the Navy testified that was very important. They never would have authorized any campaign to be sent to people who didn't want it, and they never would have authorized this campaign had they known that the list of people to whom it was sent, the list that CE chose to send it to, were not people who had opted in. And there's really no dispute that the people who got the message, there's no evidence that they provided any opt-in for it. So the Navy said they wouldn't have done it. And the Navy said that they approved this message, or not the message, they approved the campaign based entirely on the representations made to it by Campbell Ewald, that they relied on Campbell Ewald's representations. But the Navy also, you know, says that had those representations been proper and factual, they would not have approved that. So if you look at what the record says, one, the Navy testified that it relied on the representations being valid, that the recipients were validly opted in, and that the list of recipients was, their term, kosher. Two, that the CE acted against Navy will, and that because the Navy testified it would not have approved the message had it known that it was in violation of its internal policy, which CE represented it was not. The, you know, they would not have authorized it if it was sent to the people it actually was. And the decision to send it to the people it actually was made to, that's the discretionary action here, giving rise to the TCPA violation. That's entirely CE's decision. This case is, you know, Your Honor was talking about what it is that the Navy approved, but in Trevino, which was a, you know, a Fifth Circuit case, the court found that when the government uses its discretion and tells its contractor, go ahead and design something, and the contractor comes back and says, okay, here's what it is, and the Navy says, okay, that is not the, that is not enough to say that the government was exercising discretion with respect to this particular item giving rise to the tort there. Just a general approval of it is not. In this case, you know, Gomez is aware of no cases out there where the, where immunity was granted because the government approved something, where that approval was said by the government itself to be based on false representations made to it, and had it known the truth, had it known the facts, it absolutely wouldn't have authorized the messages. It absolutely would not have allowed this to go forward. There's no case that's ever given immunity in that, in that situation, and that's exactly what Campbell Ewald is asking for here. I have a slightly different question. Do you have any case that ever held a person liable under the TCPA who did not actually place the calls? Almost a lot of them, Your Honor. In fact, the FCC's ruling in May 2013 says that you can be either directly liable or you can be vicariously liable for contracting with an entity or an agent who transmitted. No, you're arguing that CE is vicariously liable for Mindematics having transmitted the text. I would argue that under the Court's jurisprudence, a recent decision in Maryland I would argue that CE is directly liable because it was so closely involved. It chose Mindematics. It contracted with Mindematics. It said, go ahead and send the messages to the people that you're going to send it to. We don't even care. We're not even going to ask if this is in compliance with the Navy's policy or anything like that. It drafted the copy of the message. It decided when it would be sent. We believe that it would be directly liable. But if not, we believe that there's ample case law and FCC authority that says that they could be held vicariously liable either in a traditional principal-agent relationship or other notions of Federal common law, which the FCC says is confidential. Well, are the circumstances under which they are trying to figure out for the purposes of this appeal, assuming that they could be liable for it, are the circumstances under which they could be liable for, is that a part of this appeal or just the blanket question of can they be liable for the call that was issued in this case? Well, admittedly Campbell E. Wold raised the issue in the brief below, but the Federal Court never ruled on direct liability. It only ruled on derivative sovereign immunity. It never addressed whether Campbell E. Wold could. It also extensively raised the issue as an alternative basis on which the District Court's dismissal could be predicated. I'm sorry, Your Honor. They raised it in their brief as an alternative. Yes. They wanted to get it. They did. Yes, that's true, Your Honor, but I would note not only that District Court didn't review it below, but also that the discovery on this case was not fully necessarily developed on that point, because after Campbell E. Wold filed his motion for summary judgment, we asked for additional discovery under 56D, and the Court granted that specifically to the extent of determining the issue of immunity and the issue of whether the Navy authorized and directed it. So there hasn't necessarily been full discovery below on that issue, but we would argue that to the extent the record exists and this Court is interested in ruling on that and not sending it back to the District Court to make the findings of fact, that there is ample evidence that there was a principal agent relationship and election. And that the recognition of the criteria of liability and the full extent of their involvement of this makes them directly liable under established case law of the Circuit. All right. Thank you, counsel. Thank you, Your Honors. Good morning Your Honors. Laura Weitzman appearing on behalf of Campbell E. Wold. I'd like to start where counsel started. He said it was undisputed that there was liability under the TCPA. We very much dispute that. The Navy can disseminate its recruiting message without violating the Telephone Consumer Protection Act. And the issue of liability, Campbell E. Wold's liability, as the court just noted, was not established below. The court's decision rested solely on the grounds of immunity and did not reach liability, and that is a contested issue. Counsel walked this court through its analysis of why the derivative sovereign immunity doctrine doesn't apply. The problem is the counsel applies the wrong test. It applies a military contractor defense that was recognized first by this court in McKay and subsequently by the United States Supreme Court in Boyle. It is the wrong test. It is the wrong test for three separate reasons. This case does not involve a state claim. This case does not involve the Federal Tort Claims Act and the discretionary function exception under the FTCA. And it does not involve a claim for wrongful death or personal injury because a product failed. And let me explain those three reasons. First, Boyle addressed a situation where it had a state claim, where a decedent the estate of a decedent of an individual, Mr. Boyle, who died in a helicopter crash because he couldn't get out through the escape hatch. That was a preemption case. That was a preemption case. This is not a preemption case. This is not a preemption case. Why doesn't that end Boyle? It does end Boyle for two additional reasons. It's not a state claim, so we don't need to address preemption. And the FTCA, which is what Boyle now analyzed this defense under, is not at issue here because there is no waiver of immunity in the Telephone Consumer Protection Act. So the broad waiver of liability of the FTCA, which was one of the issues that was discussed and formed one of the bases for Boyle, is simply not at issue. Lastly, this is not a case I think you're arguing something that you don't need to be arguing. Really, the question is, was the district court correct in holding that CE was immune based on the Yersley case? The Yersley analysis has two components. Was the authority validly conferred, and was that authority exceeded? Well, I think the Yersley case, has it ever been applied outside the context of the takings? It has been. In fact, the Fifth Circuit has applied it in the context of a negligence case in Akerson recently. It's a case that has provided the underpinnings for many other different types of immunities that have been recognized. What's the logic behind it? If the Navy made them do it, made your client do it, I can understand it perhaps. But in this case, the argument is the Navy didn't make your client do it. The Navy apparently disavows sending text messages to people that weren't on the opt-in list. So why should your client be immune? Well, the test is, did the contractor exceed the authority granted by the United States government? And the reason why Yersley exists is because if the government would be immune for doing what was done, its contractor, who actually effectuated its orders, should also be immune from liability. There's no question that the Navy is immune from liability in this case. But you're asking for immunity for something that you were specifically not authorized to do. That is not correct, Your Honor. Where were you authorized to send this particular type of call? We were first authorized by the government to conduct an SMS campaign. Okay. That's not the complaint here, that you had a campaign. Right. So it started with, here is a proposal for a text messaging campaign. And then it went to a communications plan, and then to a media plan, and then to a tactical plan, and ultimately was presented to the Navy and said, here is the plan we will implement on your behalf if you approve it. Now, counsel raised the issue of discretion. What does discretion mean? Discretion means the freedom to make a choice. Well, let's talk about this plan that you're saying. Did it say we will call people irrespective of whether they've consented or not, or we will call people even if it violates a Federal statute? No. It said. What does a plan have to do with it? It said we are going to send text messages to United States citizens between the ages of 18 and 24, which is exactly what the Navy authorized, and it is exactly what we instructed my Maddox to do. We have to be careful about who gets who. Well, so if I tell you, you know, you can come to my party as long as you don't wear a black dress, and you wear a black dress, you say, well, you said I could come to your party. No, Your Honor. I think it's the distinction is what did Campbell Ewald do? Campbell Ewald instructed a third-party vendor to follow the instructions that it had been given by the United States Navy. Now, the whole issue of 18 to 24 is really irrelevant. That's a red herring. The TCPA does not speak to the age of 18. So then the question is, does this third party, can you be responsible for the actions of this third party? Well, I think the question is. Because what you're saying is we did everything right. We did what we were supposed to do. We didn't do anything. We were authorized to do exactly what we did, and there wasn't anything to keep us from doing what we did. We did exactly what we said we were going to do. And they're saying, they're saying you did something that you were not authorized to do and that you were specifically provided from doing. We communicated exactly what the Navy had authorized to a third-party vendor who informed us that they had double consent for the recipients of these text messages. And importantly, after there were objections that were received after the initial blast was sent out, the Navy didn't say, hey, stop this campaign. Wait a minute. You told us that these were people who had consented and were getting objections. Shut it down. They actually ratified the campaign. They added opt-out language and allowed the campaign to continue on. So not only did they approve it before it was implemented, they ratified it afterwards. And, again, the age issue is completely irrelevant here. The TCPA does not have a specific age requirement. It doesn't matter if you're 20 or 40. Well, it's irrelevant with regard to liability, but we're not talking about liability. We're talking about immunity. And if it were the case that the Navy's authorization was expressly limited to those age groups and your client's action caused the sending of these text messages to people outside the authorized territory, it seems to me it's exactly irrelevant. That would be action beyond the authority, beyond the instructions, beyond the directions you've been given by the Navy. Well, the age didn't cause any harm in this case. The analogy is that's a liability issue. That's an injury issue. That's not an immunity issue. You're here on immunity. And you can't tell me, look, we're allowed to send to people all over the world because it doesn't speak to the immunity. It speaks exactly to the immunity. Well, to speak to the Court's point on this issue, in the Boyle context, when the military contractor defense, and an argument is made, well, you know, they approved this part, and so therefore we had authorization, the Court says, well, that's not the part that caused the harm. That's not the part that is at issue and is in controversy in this case. The question is whether did you approve the part that actually injured or killed the individual pursuing a claim. And so, for example, to use Boyle for example, the this was a helicopter case where the individual couldn't get out of the escape hatch. Say, for example, that the government had said, we want a helicopter with eight jump seats. And the contractor went ahead and built it with ten jump seats. The fact that it exceeded its authorization or it ignored the specifications with respect to the jump seats would be irrelevant to whether it had immunity for designing the escape hatch in the way that injured the plaintiff or killed the plaintiff. We need to focus on what the alleged harm is, because immunity is keyed to liability. What are you seeking immunity from? Ginsburg. Can I just go back to where I was trying to follow up on a question about the analysis of Yersley? You're arguing that your client should be immune under Yersley, right? Correct. Okay. So I don't see how the logic of Yersley applies to this claim, because Yersley relied very heavily on the fact that this was a takings clause violation and that the government was already obligated to reimburse under the takings clause the people claiming injury. And, therefore, there was no basis to go to its agent for liability when they were acting under the authority validly conferred by the Constitution. So in Yersley, the person who was injured because their land was eroded, it's part of the takings, and they would have right under the U.S. Constitution to get the money from the government anyway. So it would be the idea of extending an additional liability when the agent was acting within the bounds of the constitutional right didn't make any sense. Here, the government is not going to be compensating anyone for any violation of the TCPA. Yersley actually didn't address the taking issue. If you look at the last few paragraphs of Yersley, it said we don't need to reach the takings issue in this case, because regardless of whether the government is obligated to compensate, and a claim can be filed, but we're not going to address that issue today, the contractor is entitled to immunity regardless of how the taking issue is resolved. So Yersley contemplated the possibility that the plaintiff would not be compensated. And, in fact, most immunity ---- So, I mean, the Supreme Court didn't need to go there. Well, what the Supreme Court said, they had, in fact, litigated a blow, and it was an issue that was very much litigated in the Eighth Circuit and was presented to the Court in the briefs before the United States Supreme Court. And the Court said whether or not there is a takings violation that has to be compensated, we find the contractor is immune from liability. It didn't reach that issue because it wasn't necessary to reach the issue of liability. There is no indication that the plaintiff was going to be compensated in Yersley. And the same is true of most immunity cases. And that's why immunity is such a nuanced area, because the Court has to take into consideration the government's interest in doing its work with the assistance of experts and balance that against the risk that an injured party is going to end up without a remedy. And in most of these FOIL cases, people who have died, who have suffered brain injuries, who have asbestos poisoning, they are left without a remedy, because the Federal Tort Claims Act provides an exception for the government when it's exercising its discretion. And the reason why discretion is not a key issue with respect to the Yersley analysis is because if there is no discretion being exercised by the government, there is no exception to the FTCA, and the government doesn't have immunity. And if the government doesn't have immunity, you can't have derivative immunity. That is why that is such a key area of inquiry with respect to the Boyle case law. So, Georgia, I wanted to answer your question with respect to the statutory issue, if I might, but I didn't know if that addressed your question on Yersley. I don't know what you're saying. You're saying if the government doesn't have immunity, then the contractor has immunity? No. What I'm saying is that the reason why the Boyle test is so inapt to the facts of this case is because Congress has broadly waived tort liability with respect to the Yersley. Okay. So Boyle is out. We've agreed earlier. Okay. So what we have is you either have Yersley or not. Correct. Correct. I wanted to address just a different subject. Why wouldn't we take the government at its word in the report by the GAO to, I guess, Senator House, Representative Tom Davis, where it expressly describes your contract saying it's a performance-based service contracting where the contracting agency specifies the outcome, and it leaves it to the contractor to decide how best to achieve the desired outcome. And then at ER00502, it actually lists the Navy and the advertising campaign to support the Navy's recruitment needs, which is what this contract is. Well, the GAO report, there's no evidence in the record as to how that was prepared, who prepared it, what analysis was done. What I can tell you is that the base contract, which was signed between the Navy and Campbell Ewald, says that the Navy retains control. The commander of Navy Recruiting Command retains control over all deliverables. All deliverables under the contract had to be approved. And that was consistent with the testimony of the Navy's 30B6 witness, Lee Buckshocker, who testified, quote, CE doesn't do anything without the approval of the United States Navy Recruiting Command, period. But what do you do with the other side of the supposed evidence in this case, that at deposition the Navy people said we didn't authorize this, we didn't want it being sent this way? I mean, so you're saying on one level the Navy retained possession, I mean, the right to control and direct and approved all this stuff. What do you do with this other evidence that say this is not what we wanted? I think if you read the testimony, what it says is that we approved this text messaging campaign with the understanding that it was going to be sent to people who had opted in. That's precisely what we understood to be the case and what we instructed a subsequent third-party vendor who then, in fact, delegated its the transmission to a foreign country. Well, let's assume that that's what you did, okay? And let's assume that you're correct. Then the question becomes can you be liable for the actions of some third person that didn't follow that directive? Well, that actually rolls us over into the statutory issue. Can we be liable for the transmission of a message that we didn't actually send ourselves? And there are really only two forms of liability that would apply in this case, and both of those were discussed in the May 2013 FCC order that counsel referenced. The first one is direct liability, and that doesn't apply. We clearly did not initiate or send the messages themselves. And while counsel has pointed to the universal elections case, I think he said it was this Court's case, but it's actually a District of Maryland case from 2011, in that case, the defendants actually uploaded the message and the list of phone numbers themselves, and just somebody else had sent. But they actually did the bulk of the transmission themselves. They decided what the numbers that were going to be called. So that case is just not on point. The other possibility of liability for the actual transmission of the message would be vicarious liability. And again, the FCC's 2013 order is very instructive on this point. It limited vicarious liability to where a, it indicated that while a seller does not generally initiate calls made through a third-party telemarketer within the meaning of the TCPA, it may nevertheless be held vicariously liable under common law principles of agency for violations of the TCPA that are committed by third-party telemarketers. What's important about that language? The word seller and telemarketer. Those both have very specific definitions in the regulations. A seller is a person who... Counsel, you're well over your time, and I think the bench has pretty well indicated it's focused on the immunity issue today. So thank you very much. Thank you, Your Honor.
judges: Benavides, WARDLAW, CLIFTON